Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRAM GALMI, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH,<br><br>    Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Amram Galmi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings,

Class Action Complaint for Violation of the Federal Securities Laws

wire and press releases published by and regarding Teva Pharmaceutical Industries Limited ("Teva" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the American Depositary Shares ("ADSs") of Teva between February 10, 2015 and November 3, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate facilities in this district, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased Teva ADSs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Teva primarily develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines. The Company is incorporated in Israel and its principal executive offices are located at 5 Basel Street, P.O. Box 3190, Petach Tikva 4951033, Israel. Upon information and belief, the Company operates facilities in this district at Irvine, CA. Teva ADSs are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TEVA."

8.     Defendant Erez Vigodman ("Vigodman") has been the Chief Executive Officer ("CEO") and President of Teva since February 11, 2014.

9.     Defendant Eyal Desheh ("Desheh") has been the Chief Financial Officer ("CFO") and Group Executive Vice President at Teva since July 2008 and 2012 respectively.

10.    Defendants Vigodman and Desheh are sometimes referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

- 3 -

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under respondeat superior and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

15. On February 9, 2015, during aftermarket hours, the Company filed a Form 20-F for the fiscal year ended December 31, 2014 (the "2014 20-F") with the SEC which provided the Company's year-end financial results and stated that the Company's internal control over financial reporting was effective as of December 31, 2014. The 2014 20-F was signed by Defendant Desheh and both Defendants Vigodman and Desheh signed Teva's consolidated balance sheet included in the 2014 20-F. The 2014 20-F also contained signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

16. The 2014 20-F discussed Teva's business strategy, stating in relevant part:

Class Action Complaint for Violation of the Federal Securities Laws

Strategy

In 2014, we began a process of re-defining and re-focusing our business strategy to better leverage our strengths and differentiate ourselves in the pharmaceutical market. We seek to capitalize on our advantages—including the largest generic medicines business in the world, a focused specialty business, a unique OTC business and our integrated R&D and API capabilities—to provide patients with integrated, outcome-focused solutions. Underlying our strategy is our heightened focus on profitable and sustainable business.

The key elements of our strategy consist of the following:

- Solidifying our foundation and driving organic growth. We are solidifying the core foundations of our generics and specialty businesses to create additional value from our existing operations. In 2014, we implemented organizational and leadership changes, such as the creation of the Global Generics Medicines group, designed to achieve global integration and improve focus and effectiveness. We seek to drive organic growth in our generics business by emphasizing markets where we have or are pursuing leadership positions, and by shifting our generic pipeline and portfolio to include a larger proportion of complex products, with high barriers to entry.

- Focusing on key growth markets. While we currently operate in numerous markets throughout the world, in 2015 we intend to concentrate our efforts on a smaller number of large growth markets where we believe we can establish or expand leadership positions. We are exploring both organic and inorganic initiatives to achieve leadership in these markets.

- Maintaining Copaxone® and other key specialty products. We have enhanced our multiple sclerosis ("MS") franchise through the introduction of our three-times-a-week Copaxone® 40 mg/mL product in the United States, and will launch Copaxone® 40 mg/mL in Europe and other countries in 2015. For many of our other specialty products, we are expanding into new markets, improving the products and taking further steps to protect the franchise while creating value for patients and payors.

- 5 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- •  Solidifying leadership positions in our core therapeutic areas. We plan to focus on our core therapeutic areas of CNS (including MS, neurodegenerative diseases and pain) and respiratory
(including asthma and chronic obstructive pulmonary disease), establishing leadership positions in such areas. In so doing, we will leverage our focused R&D efforts, new product submissions and strong execution of product launches. In addition, in women's health and oncology, where we have a significant commercial presence, we strive to maintain the existing franchises and may consider business development opportunities to maximize sustainable profitability.

- •  Pursuing strategic business development initiatives. We continue to pursue business development initiatives across all our activities. As part of these initiatives, we will continue to evaluate opportunities for joint ventures, collaborations and other commercially-oriented activities.

- •  Executing on our cost reduction program. We are focused on the continued execution of our sustainable efficiency program, which includes improvements in the operational efficiency of our production plants, in our global procurement activities, and others.

17.   The 2014 20-F discussed the Company's strategy in the United States market in further detail, stating in relevant part:

United States

    We are the leading generic drug company in the United States. We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a carefully selected portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

- 6 -

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

18.     On February 11, 2016, the Company filed a Form 20-F for the fiscal year ended December 31, 2015 (the "2015 20-F") with the SEC which provided the Company's year-end financial results and stated that the Company's internal control over financial reporting was effective as of December 31, 2015. The 2015 20-F was signed by Defendant Desheh and both Defendants Vigodman and Desheh signed Teva's consolidated balance sheet included in the 2015 20-F. The 2015 20-F also contained SOX certifications signed by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

- 7 -

Class Action Complaint for Violation of the Federal Securities Laws

19.     The 2015 20-F discussed Teva's business strategy, stating in relevant part:

Strategy

In 2014, we began a process of re-defining and re-focusing our business strategy to better leverage our strengths and differentiate ourselves in the pharmaceutical market. We seek to capitalize on our advantages—including the largest generic medicines business in the world, a focused specialty business, a unique OTC business and our robust R&D and API capabilities—to provide patients with integrated, outcome-focused solutions. Underlying our strategy is our heightened focus on profitable and sustainable business.

The key elements of our strategy consist of the following:

- Solidifying our foundation and driving organic growth. We have solidified, and continue to strengthen, the core foundations of our generics and specialty businesses to create additional value from our existing operations. We implemented organizational and leadership changes, such as the creation of the Global Generics Medicines group, designed to achieve global integration and improve focus and effectiveness. We continue to drive organic growth and improve profitability in our generics business.

- Transforming our generics business. Upon consummation of our acquisition of Actavis Generics, the Actavis Generics portfolio and pipeline, combined with our strong existing generics portfolio, will further enhance our goals of delivering the highest quality generic medicines at competitive prices. The combined generic business will have a commercial presence across 100 markets, including a top three leadership position in over 40 markets.

- Focusing on key growth markets. While we currently operate in numerous markets throughout the world, we intend to concentrate our efforts on a smaller number of growth markets where we believe we can establish or expand leadership positions. We are exploring both organic and inorganic initiatives to achieve leadership in these markets, including, for example, our pending acquisition of Rimsa, a leading pharmaceutical company in Mexico.

- 8 -

- **Maintaining Copaxone® and other key specialty products.** We enhanced our multiple sclerosis ("MS") franchise through the introduction of our three-times-a-week Copaxone® 40 mg/mL product in the United States, Europe and other countries in 2015. We also enhanced our oncology portfolio with the FDA's approval in December 2015 of Bendeka™ (bendamustine hydrochloride), which complements our Treanda® franchise. For many of our other specialty products, we are expanding into new markets, improving the products and taking further steps to protect the franchise while creating value for patients and payors.

- **Solidifying leadership positions in our core therapeutic areas.** Our focus is on our core therapeutic areas of CNS (including MS, neurodegenerative diseases, movement disorders and pain care) and respiratory (including asthma and chronic obstructive pulmonary disease), where we seek to establish leadership positions. In the past year, we have taken significant steps, both internally and by pursuing business development initiatives, to significantly solidify our position in our core therapeutic areas, specifically with the acquisitions of Labrys and Auspex.

- **Pursuing strategic business development initiatives.** We continue to pursue business development initiatives across all our activities. As part of these initiatives, we will continue to evaluate opportunities for joint ventures, collaborations and other activities that support our strategy.

20.     The 2015 20-F discussed the Company's strategy in the United States market in further detail, stating in relevant part:

United States

We are the leading generic drug company in the United States. We market approximately 370 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectable and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a portfolio of products that will provide added value to our

Class Action Complaint for Violation of the Federal Securities Laws

customers, payors and patients, utilizing new and advanced technologies.

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

In most other markets in which we operate, we use an integrated and comprehensive marketing model, offering a range of generic, specialty and OTC products.

21.   The statements referenced in ¶¶ 15-20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1)

Class Action Complaint for Violation of the Federal Securities Laws

1  (1) Teva was engaging and/or had engaged in conduct that would result in an antitrust

2  investigation by the U.S. Department of Justice ("DOJ") and the State of Connecticut

3  Office of the Attorney General; (2) the DOJ investigation and the underlying conduct

4  could cause U.S. prosecutors to file criminal charges against Teva by the end of 2016

5  for suspected price collusion; and (3) in turn, Teva lacked effective internal

6  controls over financial reporting; and (4) as a result, Teva's public statements

7  were materially false and misleading at all relevant times.

8                              **The Truth Emerges**

9         22.    On August 4, 2016, the Company filed a Form 6-K with the SEC which

10  was signed by Defendant Desheh. The Form 6-K discussed government

11  investigations relating to Teva's pricing and marketing, disclosing that the company's

12  subsidiary, Teva USA, received two subpoenas, stating in relevant part:

13

14         On June 21, 2015, Teva USA received a subpoena from the Antitrust
          Division of the United States Department of Justice seeking
15         documents and other information relating to the marketing and pricing
          of certain of Teva USA's generic products and communications with
16         competitors about such products. On July 12, 2016, Teva USA
          received a subpoena from the Connecticut Attorney General seeking
17         documents and other information relating to potential state antitrust
18         law violations. Teva is cooperating fully with these requests.

19         23.    On this news, Teva's ADSs fell $1.24 per share from its previous closing

20  price, to close at $54.21 per share on August 5, 2016, damaging investors.

21         24.    On November 3, 2016, *Bloomberg* published the article "U.S. Charges in

22  Generic-Drug Probe to Be Filed by Year End" which discussed the DOJ's two year

23  investigation of suspected price collusion by several pharmaceutical companies,

24  including Teva, which will likely result in prosecutors filing criminal charges by the

25  end of the year, stating in part:

26

27         U.S. prosecutors are bearing down on generic pharmaceutical
          companies in a sweeping criminal investigation into suspected price
28

collusion, a fresh challenge for an industry that's already reeling from public outrage over the spiraling costs of some medicines.

The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter. The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.

Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic. Among the drugmakers to have received subpoenas are industry giants Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, Lannett Co., Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.

\*      \*      \*

Although it isn't illegal for companies to raise prices at the same time, it's against the law for competitors to agree to set prices or coordinate on discounts, production quotas or fees that affect prices. The federal government can prosecute companies for collusion and seek penalties and potentially send executives to jail.

Charges could extend to high-level executives, according to the people. The antitrust division, which has an immunity program to motivate wrongdoers to confess and inform on others, has stepped up its commitment to holding individuals responsible.

\*      \*      \*

Generic drug companies are also contending with a civil price-fixing investigation by Connecticut Attorney General George Jepsen. Jepsen is seeking to lead a group of states to probe the industry, which could result in cases seeking damages, according to people familiar with the matter. A spokesman for the Connecticut Attorney General's office declined to comment.

- 12 -

Class Action Complaint for Violation of the Federal Securities Laws

The first subpoenas in the generics investigation were issued by Connecticut in July 2014, while the Justice Department followed in November, according to regulatory filings by the companies. The investigations initially focused on mid-sized U.S. companies and have since extended to the biggest manufacturers and U.S. subsidiaries of overseas companies.

25.     On this news, Teva ADSs fell $4.13 per share, or over 9.5%, from its previous closing price to close at $39.20 per share on November 3, 2016, damaging investors.

26.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Teva ADSs traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Teva ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by

Class Action Complaint for Violation of the Federal Securities Laws

mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- • whether the prices of Teva ADSs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- • whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- • Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- • the omissions and misrepresentations were material;

- • Teva ADSs are traded in efficient markets;

- • the Company's ADSs were liquid and traded with moderate to heavy volume during the Class Period;

- • the Company traded on the NYSE, and was covered by multiple analysts;

- • the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- • Plaintiff and members of the Class purchased and/or sold Teva ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

34.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

36.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

Class Action Complaint for Violation of the Federal Securities Laws

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Teva ADSs during the Class Period.

40. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

41. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

42. As a result of the foregoing, the market price of Teva ADSs was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Teva ADSs during the Class Period in purchasing Teva ADSs at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

Class Action Complaint for Violation of the Federal Securities Laws

43.     Had Plaintiff and the other members of the Class been aware that the market price of Teva ADSs had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Teva ADSs at the artificially inflated prices that they did, or at all.

44.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Teva ADSs during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

48.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

Class Action Complaint for Violation of the Federal Securities Laws

49.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Teva ADSs.

50.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

51.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 6, 2016          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws