Richard D. McCune (State Bar No: 132124)
**MCCUNE WRIGHT AREVALO, LLP**
3281 East Guasti Road, Suite 100
Ontario, CA 91761
Tel: (909) 572-8019
Fax: (909) 557-1275
rdm@mccunewright.com
*Local Counsel for Movants &*
*[Proposed] Local Counsel for the Class*

E. Powell Miller (*pending admission pro hac vice*)
Sharon S. Almonrode (*pending admission pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
*Lead Counsel for Movants &*
*[Proposed] Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRAM GALMI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH,<br><br>Defendants. | Case No. 2:16-cv-08259-TJH-AS<br><br>Hon. Terry J. Hatter, Jr.<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, AND WATERFORD TOWNSHIP POLICE AND FIRE RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL; DECLARATION OF RICHARD D. McCUNE; EXHIBITS; [PROPOSED] ORDER** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

I.    INTRODUCTION .......................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................................ 3

III.  STATEMENT OF FACTS ................................................................ 4

IV.   ARGUMENT .............................................................................. 6

      A. PROPOSED LEAD PLAINTIFF
         SHOULD BE APPOINTED LEAD PLAINTIFF ............................. 6

      1.  The Procedure Required by the PSLRA ..................................... 6

      2.  Proposed Lead Plaintiff Has Satisfied the
          Lead Plaintiff Requirements of the PSLRA................................. 8

          a.  Proposed Lead Plaintiff Has Complied with
              the PSLRA and Should Be Appointed Lead Plaintiff........... 8

          b.  Proposed Lead Plaintiff Has the Largest
              Financial Interest in the Relief Sought by the Class ............. 9

          c.  Proposed Lead Plaintiff Otherwise Satisfies the
              Requirements of Rule 23........................................................ 9

      3.  Wayne County, Roseville, and Waterford Are An
          Appropriate Lead Plaintiff Group ................................................. 12

      B. THE COURT SHOULD APPROVE PROPOSED
         LEAD PLAINTIFF'S CHOICE OF COUNSEL ........................... 14

V.    CONCLUSION ........................................................................... 15

Memorandum of Points and Authorities in Support of Motion to Appoint Lead Counsel
CASE NO. 8:16-CV-2282-TJH-AS

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009)................................................. 13, 14

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003)....................................................... 8

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005)................................................... 13

*Copia Claims, LLC v. California Infrastructure and Economic
    Development Bank*, No. 2:09-CV-01610-GEB-DAD,
    2009 WL 3740623 (E.D. Cal. Sep. 15, 2009) ............................ 10

*In re Emulex Corp.*,
    210 F.R.D. 717 (C.D. Cal. 2002)................................................... 11

*Freudenberg v. E\*Trade Fin. Corp.*, No. 07 Civ. 8538,
    2008 WL 2876373 (S.D.N.Y. July 16, 2008)............................... 13

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) .......................................... 10, 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................... 10

*Hom v. Vale, S.A.*,
    No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. March 7, 2016) ... 10

*Krieger v. Atheros Communs., Inc.*,
    2011 U.S. Dist. LEXIS 147521 (N.D. Cal. Dec. 12, 2011) ......................... 8

*In re Northern District of California, Dalkon Shield
    IUD Products Liability Litig.*,
    693 F.2d 847 (9th Cir. 1982) ...................................................... 11

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC (RNBx), 2014 WL 4180766
    (C.D. Cal. Aug. 19, 2014)............................................................. 12

*Puente v. Chinacast Educ. Corp.*,
    Nos. CV 12-4621-JFW (PLAx), CV 12-5107-JFW (PLAx), 2012 WL
    3731822 (C.D. Cal. Aug. 22, 2012)............................................ 12

*Reimer v. Ambac Fin. Grp. Inc., Inc.*,
    No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....... 13

*In re SLM Corp. Sees. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009) ................................................... 8

## TABLE OF AUTHORITIES (cont.)

**CASES**                                                                                  **PAGE(S)**

*Takeda v. Turbodyne Technologies, Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ........................................ 10

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) .........................................*passim*

*Wenderhold v. Cylink Corp.*,
188 F.R.D. 577 (N.D. Cal. 1999) ........................................ 10

*Yousefi v. Lockheed Martin Corp.*,
70 F. Supp. 2d 1061 (C.D. Cal. May 25, 1999) ........................................ 12

**STATUTES & RULES**

Securities Exchange Act of 1934 ........................................ 1

    Section 10(b) ........................................ 1

    Section 20(a) ........................................ 1

    Section 21D(a)(3)(B) ........................................ 1

15 U.S.C. § 78u-4(a)(1) ........................................ 6

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................ 7

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ........................................ 7

15 U.S.C. § 78u-4(a)(3)(B) ........................................ 7, 8

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................ 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................ 3, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................ 2, 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................ 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................ 3, 14

Federal Rules of Civil Procedure 23 ........................................*passim*

Federal Rules of Civil Procedure 23(a) ........................................ 10

Federal Rules of Civil Procedure 23(a)(3) ........................................ 10

## TABLE OF AUTHORITIES (cont.)

**STATUTES & RULES**                                                    **PAGE(S)**

Federal Rules of Civil Procedure 23(a)(4)...........................................................11

### MEMORANDUM OF POINTS AND AUTHORITIES

The Wayne County Employees' Retirement System ("Wayne County"), City of Roseville Employees' Retirement System ("Roseville"), and Waterford Township Police and Fire Retirement System ("Waterford) (collectively "Proposed Lead Plaintiff") respectfully submit this memorandum of law in support of their motion for: (1) appointment as Lead Plaintiff in this action, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (2) approval of Proposed Lead Plaintiff's selection of The Miller Law Firm, P.C. ("Miller Law") as Lead Counsel for the Class (as defined herein) and McCune Wright Arevalo, L.L.P. as Local Counsel.

## I.    INTRODUCTION

The above-captioned case is, to the best of Proposed Lead Plaintiff's knowledge, the only federal securities class action currently pending against Teva Pharmaceutical Industries, Ltd. ("Teva" or the "Company"), Erez Vigodman ("Vigodman"), and Eyal Desheh ("Desheh"), (collectively, "Defendants"), alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants, as well as violations of Section 20(a) of the Exchange Act against both Vigodman and Desheh individually.  The action was brought on behalf of a class of persons who purchased or otherwise acquired Teva securities between February 10, 2015 and November 3, 2016, inclusive (the "Class Period"), and who were thereby damaged (the "Class").[1]

In securities class actions, the PSLRA requires district courts to appoint as lead plaintiffs the "member or members of the purported plaintiff class that the

---

[1] Excluded from the Class are: Defendants; members of the immediate family of Mr. Vigodman; members of the immediate family of Mr. Desheh; any subsidiary or affiliate of Teva; the directors, officers, and employees of Teva or its subsidiaries or affiliates; any entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors, and assigns of any excluded person.

court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Proposed Lead Plaintiff should be appointed as Lead Plaintiff because: (1) Proposed Lead Plaintiff timely filed this motion; (2) to their counsel's knowledge, Proposed Lead Plaintiff has the largest financial interest in the relief sought by the Class because it purchased Teva securities during the Class Period and suffered approximately $814,014.98[2] in losses under the first-in, first-out (FIFO) method or $801,466.99 in losses under the last-in, first out (LIFO) method as a result of Defendants' misconduct; and (4) Proposed Lead Plaintiff's claims are typical of the claims of the Class and they will fairly and adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Further demonstrating their adequacy and ability to drive the litigation in the best interests of the Class, authorized representatives of Wayne County, Roseville, and Waterford have submitted herewith a Joint Declaration detailing the steps they have taken to coordinate their joint oversight of the action and their counsel. (*See* McCune Decl., Ex. 3.)

---

[2] Wayne County's, Roseville's, and Waterford's PSLRA-required Certifications are provided as Exhibit 1 to the Declaration of Richard D. McCune in Support of Motion of Wayne County Employees' Retirement System, City of Roseville Employees' Retirement System, and Waterford Township Police and Fire Retirement System for Appointment as Lead Plaintiff and Approval of Choice of Counsel (herein, the "McCune Decl."). In addition, charts setting forth calculations of Wayne County's, Roseville's, and Waterford's estimated losses considering the current "lookback price" are provided as Exhibit 2 to the McCune Decl.

Wayne County, Roseville, and Waterford have extensive experience serving as fiduciaries and are sophisticated institutional investors with a real financial interest in the litigation, which provides assurance that they have both the incentive and ability to supervise and monitor counsel. Further, Wayne County, Roseville, and Waterford fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. Wayne County, Roseville, and Waterford have selected The Miller Law Firm, P.C. as Lead Counsel for the Class and McCune Wright Arevalo, L.L.P. as Local Counsel for the Class.   The Miller Law Firm has substantial experience in successfully prosecuting securities class actions and has the resources to efficiently prosecute this action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Additionally, McCune Wright Arevalo, L.L.P. has significant class action experience, which will be extremely valuable in prosecuting this matter. (*See* McCune Decl., Ex. 6.) Accordingly, Wayne County, Roseville, and Waterford respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## II.    PROCEDURAL BACKGROUND

On November 6, 2016, the above-captioned action was filed by Mr. Amram Galmi, alleging violations of the Exchange Act on behalf of all persons who purchased or otherwise acquired Teva securities during the Class Period. On November 6, 2016, counsel for Mr. Galmi published a notice of pendency of this action on *PRNewswire*, (McCune Decl. Ex. 4), advising members of the proposed Class of their right to move this Court to serve as lead plaintiff by January 5, 2017.

Memorandum of Points and Authorities in Support of Motion to Appoint Lead Counsel
CASE NO. 8:16-CV-2282-TJH-AS

## III.    STATEMENT OF FACTS

"Teva primarily develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines." (¶ 7.)[3] The company is incorporated in Israel, with its executive offices located at 5 Basel Street, P.O. Box 3190, Petach Tikva 4951033, Israel. (¶ 7.) Teva ADSs[4] are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TEVA." (¶ 7.) "Defendant Erez Vigodman has been the Chief Executive Officer ("CEO") and President of Teva since February 11, 2014. (¶ 8.) Defendant Eyal Desheh has been the Chief Financial Officer ("CFO") and Group Executive Vice President at Teva since July 2008 and 2012 respectively." (¶ 9.)

On February 9, 2015, Teva filed a Form 20-F ("2014 20-F") with the SEC for the fiscal year that ended December 31, 2014. (¶ 15.) The form provided Teva's year-end financial results and stated that the Company's "internal control over financial reporting was effective as of December 31, 2014." (¶ 15.) The 2014 20-F was signed by Defendant Desheh and both Defendants, Vigodman and Desheh, signed Teva's consolidated balance sheet. (¶ 15.) The 2014 20-F also contained "signed certifications, pursuant to the Sarbanes-Oxley Act of 2002," by both Vigodman and Desheh, "attesting to the accuracy of the financial reporting, the disclosure of any material changes to [Teva's] internal control over financial reporting, and the disclosure of all fraud." (¶ 15.) The 20-F form also discussed Teva's business strategy. (¶ 16.)

On February 11, 2016, Teva filed a Form 20-F (2015 20-F), for the fiscal year that ended December 31, 2015, with the SEC that provided Teva's "year-end financial results and stated that the Company's internal control over financial

---

[3] Citations to "¶___" refer to paragraphs in the "Galmi Complaint," filed in this matter on November 6, 2016, Dkt No. 1.

[4] "ADS" refers to an American Depository Share. Definition: "A U.S. dollar-denominated equity share of a foreign-based company available for purchase on an American stock exchange." *American Depository Share – ADS*, Investopedia, http://www.investopedia.com/terms/a/ads.asp (last accessed January 5, 2017).

reporting was effective as of December 31, 2015." (¶ 18.) This was signed by Defendant Desheh and "both Defendants Vigodman and Desheh signed Teva's consolidated balance sheet included in the 2015 20-F." (¶ 18.) At no point, in either the 2014 20-F or the 2015 20-F did Teva disclose facts, which have since been made public, regarding government investigations into the company.

This action alleges that Teva's statements in the 2014 and 2015 20-Fs were

> materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Teva was engaging and/or had engaged in conduct that would result in an antitrust investigation by the U.S. Department of Justice ("DOJ") and the State of Connecticut Office of the Attorney General; (2) the DOJ investigation and the underlying conduct could cause U.S. prosecutors to file criminal charges against Teva by the end of 2016 for suspected price collusion; and (3) in turn, Teva lacked effective internal controls over financial reporting; and (4) as a result, Teva's public statements were materially false and misleading at all relevant times.

(¶ 21.)

On August 4, 2016, Teva "filed a Form 6-K with the SEC which was signed by Defendant Desheh." (¶ 22.) The form, which "discussed government investigations relating to Teva's pricing and marketing," disclosed that the company's subsidiary, Teva USA, [had] received two subpoenas . . . ." (¶ 22.) These two subpoenas stated, in relevant part:

> On June 21, 2015, Teva USA received a subpoena from the Antitrust Division of the United States Department of Justice seeking documents and other information relating to the marketing and pricing of certain of Teva USA's generic products and communications with competitors about such products. On July 12, 2016, Teva USA received a subpoena from the Connecticut Attorney General seeking documents and other information relating to potential state antitrust law violations. Teva is cooperating fully with these requests.

(¶ 22.) As a result of this information being made public, "Teva's ADSs fell $1.24 per share from its previous closing price, to close at $54.21 per share on August 5, 2016, damaging investors." (¶ 23.)

"On November 3, 2016, *Bloomberg* published the article 'U.S. Charges in Generic-Drug Probe to Be Filed by Year End,'[5] which discussed the DOJ's two year investigation of suspected price collusion by several pharmaceutical companies, including Teva, which will likely result in prosecutors filing criminal charges by the end of the year . . . . " (¶ 24.) The article went on to state the possible criminal charges that could be brought against certain companies, including Teva. As a result of this article, "Teva ADSs fell $4.13 per share, or over 9.5%, from its previous closing price to close at $39.20 per share on November 3, 2016, damaging investors." (¶ 25.)

This decline in the market value of the Company's ADSs caused Plaintiff and other Class members to suffer significant losses and damages. (¶ 26.)

## IV.   ARGUMENT

### A. PROPOSED LEAD PLAINTIFF SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.  The Procedure Required by the PSLRA

The PSLRA establishes the procedure for the appointment of lead plaintiffs in "each private action arising under [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). First, the pendency of the action must be publicized in a widely-circulated, national, business-oriented publication or wire service within 20 days from the date on which the first complaint is filed, informing class

---

[5] David McLaughlin & Caroline Chen, *U.S. Charges in Generic-Drug Probe to be Filed by Year-End*, BLOOMBERG (Nov. 3, 2016), https://www.bloomberg.com/news/articles/2016-11-03/u-s-charges-in-generic-drug-probe-said-to-be-filed-by-year-end.

members of their right to file a motion for appointment as lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(A)(i). Notice was published via *PRNewswire*[6] on November 6, 2016. (*See* McCune Decl, Ex. 4.)

Second, within 60 days after publication of the first notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiffs, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). That period of time expires on January 5, 2016.

Third, the PSLRA provides that, within 90 days after the publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiffs the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).

In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a  notice…;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 and the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 664 (C.D. Cal. 2005).  As such, the PSLRA sets up a rebuttable presumption that the

---

[6] Courts have recognized national newswire services such as *PRNewswire* as meeting the statutory requirement that notice be published "in a widely circulated national business-oriented wire service." *See, e.g.*, *Copia Claims, LLC v. California Infrastructure and Economic Development Bank*, No. 2:09-CV-01610-GEB-DAD, 2009 WL 3740623 (E.D. Cal. Sep. 15, 2009); *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. March 7, 2016).

plaintiffs with the largest stake in the controversy will be appointed as lead plaintiffs. *See Tanne*, 226 F.R.D. at 664-65.

Nevertheless, the Court may consider other factors in addition to the size of the loss. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("[A] Proposed Lead Plaintiff's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class."). These additional considerations include whether under Rule 23, the candidate is a typical and adequate representative. *See id.*; *see also Krieger v. Atheros Communs., Inc.*, Case No.: 11-CV-00640-LHK, 2011 U.S. Dist. LEXIS 147521, at *8 (N.D. Cal. Dec. 12, 2011); *In re SLM Corp. Sees. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) ("Under the PSLRA, a proposed lead plaintiff must, *inter alia*, make a preliminary showing that it satisfies the typicality and adequacy requirements of FRCP. 23.").

## 2. Proposed Lead Plaintiff Has Satisfied the Lead Plaintiff Requirements of the PSLRA

### a. Proposed Lead Plaintiff Has Complied with the PSLRA and Should Be Appointed Lead Plaintiff

Pursuant to the provisions of the PSLRA, Proposed Lead Plaintiff has timely moved to be appointed Lead Plaintiff on behalf of all members of the Class within the requisite time frame. Proposed Lead Plaintiff has duly signed and filed certifications attesting that they are willing to serve as class representatives. (*See* McCune Decl., Ex. 1.) In addition, the Proposed Lead Plaintiff has selected and retained experienced and competent counsel to represent them and the Class. (*See* McCune Decl., Exs. 1, 3, 5, 6.)

Accordingly, Proposed Lead Plaintiff has fulfilled the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their

application for appointment as Lead Plaintiff and approval of their choice of Lead Counsel, as set forth herein, considered and approved by the Court.

### b. Proposed Lead Plaintiff Has the Largest Financial Interest in the Relief Sought by the Class

In determining the "most adequate plaintiff", the court must be guided by a presumption that the most adequate plaintiff is the "person or group" that "has the largest financial interest in the relief sought by the class" and that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see Tanne*, 226 F.R.D. at 665. This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As evidenced by, among other things, the signed certifications attached to the McCune Decl., Ex. 1, Proposed Lead Plaintiff acquired tens of thousands of shares of Teva during the Class Period, and suffered approximately $814,014.98 in losses under the FIFO method or $801,466.99 in losses under the LIFO method as a result of the alleged wrongdoing.  (*See* McCune Decl, Ex. 2.) Therefore, Proposed Lead Plaintiff has a significant financial interest in this case. Proposed Lead Plaintiff's counsel has not received notice of any other applicants having a greater financial interest. If this remains the case, Proposed Lead Plaintiff would possess the largest financial interest in the outcome of the litigation and would be presumed to be the "most adequate" lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### c. Proposed Lead Plaintiff Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiffs must also "otherwise satisfy the requirements of Rule

23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(cc). With respect to the claims of class representatives, Rule

23(a) requires that: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) such

claims are typical of those of the class; and (4) the representative will fairly and

adequately protect the interests of the class. Typicality and adequacy of

representation are the only provisions relevant to the selection of lead plaintiffs

under the PSLRA.  *See Tanne*, 226 F.R.D. at 665. In addition, lead plaintiffs need

only make a "preliminary showing" of typicality and adequacy at this early stage

of the proceedings. *Id.* at 666; citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542,

546 (N.D. Tex. 1997) ("Evidence regarding the requirements of Rule 23 will, of

course, be heard in full at the class certification hearing. There is no need to

require anything more than a preliminary showing at this stage"); *see also*

*Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999) (stating that,

at this stage of the litigation, nothing more than a preliminary showing is

required).

The typicality requirement of Rule 23(a)(3) of the Federal Rules of Civil

Procedure is satisfied where the named representative's claims "align with those

of absent class members so . . . that the absentee's interests will be fairly

represented." *Tanne*, 226 F.R.D. at 667; quoting *Takeda v. Turbodyne*

*Technologies, Inc.*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999). "Under [Rule

23's] permissive standards, representative claims are 'typical' if they are

reasonably co-extensive with those of absent class members; they need not be

substantially identical." *Tanne*, 226 F.R.D. at 667; quoting *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Proposed Lead Plaintiff easily satisfies the typicality requirement. As with

each member of the Class, Proposed Lead Plaintiff purchased shares of Teva

during the Class Period, at prices artificially inflated by Defendants' materially

false and misleading statements or omissions, and suffered damages as a consequence. Thus, "[i]f successful in proving [its] injury and losses resulting from" Defendants' allegedly fraudulent scheme, Proposed Lead Plaintiff "will necessarily prove the conduct which underlies the claims of all purported plaintiffs, just as [they] will establish the elements of those claims." *Gluck*, 976 F. Supp. at 546. Accordingly, Proposed Lead Plaintiff's "claims are typical of those of the purported class members." *Id.*

In addition, movants seeking appointment as lead plaintiffs must demonstrate that they will "fairly and adequately represent the Class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when counsel for the class is qualified and competent, and the interests of the representative are not antagonistic to the interests of absent class members. *See In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 855 (9th Cir. 1982); *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) ("In evaluating whether a class representative is adequate, courts assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications.").

To demonstrate their adequacy, Proposed Lead Plaintiff points to the damages they have suffered as a result of their purchase of Teva securities based on the false and misleading statements and omissions made by Defendants during the Class Period. Proposed Lead Plaintiff's interests in the action are, therefore, aligned with the interests of the Class. Moreover, there is no evidence of antagonism between the interests of Proposed Lead Plaintiff and the other members of the Class. Rather, Proposed Lead Plaintiff has expressed in their certifications their willingness to represent the Class as Lead Plaintiff. (*See* McCune Decl., Ex. 1.)  In addition, as discussed herein, Proposed Lead Plaintiff has selected and retained competent, experienced counsel to prosecute this action.

Accordingly, Proposed Lead Plaintiff satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

### 3.   Wayne County, Roseville, and Waterford Are an Appropriate Lead Plaintiff Group

The appointment of a group of Class members to serve as Lead Plaintiff is expressly permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and district courts within the Ninth Circuit and across the country have recognized the propriety of appointing such groups to serve as Lead Plaintiff. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061 (C.D. Cal. May 25, 1999); *Puente v. Chinacast Educ. Corp.*, Nos. CV 12-4621-JFW (PLAx), CV 12-5107-JFW (PLAx), 2012 WL 3731822 (C.D. Cal. Aug. 22, 2012); *Pace v. Quintanilla*, No. SACV 14-2067-DOC (RNBx), 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014).

Here, Wayne County, Roseville, and Waterford determined on their own to jointly seek appointment as Lead Plaintiff to provide the Class with strong and diverse leadership. As a result of their shared goals and desire to work together as sophisticated institutional investors, Wayne County, Roseville, and Waterford authorized counsel to seek joint appointment as Lead Plaintiff and, if appointed, to jointly lead this litigation to achieve those aims and objectives. (*See* McCune Decl., Ex. 3.)

Importantly, Wayne County, Roseville, and Waterford are sophisticated institutional investors and have provided a history of their discussions in relation to this case and have agreed to jointly and cooperatively prosecute this action for the benefit of the Class. (*See* McCune Decl., Ex. 3.) Significantly, Wayne County, Roseville, and Waterford have the benefit of resources and dedicated personnel who are highly experienced in conducting and supervising complex litigation, as well as internal counsel to oversee the litigation. Counsel for the three institutional investors will strategies for prosecuting the action, measures that could be taken to ensure effective oversight of counsel, possible processes

employed for reaching agreement on difficult or disputed strategic litigation discussions, and protocols to ensure the Class receives the best representation possible.

Facts such as these that demonstrate the group members' leadership and initiative are precisely the types of evidence that courts have repeatedly found to satisfy the requirements of a cohesive group that is able to direct the litigation apart from its lawyers. *See, e.g. In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel"); *Reimer v. Ambac Fin. Grp. Inc., Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (finding that "joint conference calls" regarding litigation strategy demonstrated the group was able to function independently of counsel); *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) (permitting proposed group whose members submitted "that they have . . . a clear understanding as to consultation, information sharing, and management of the litigation").

Here, Wayne County, Roseville, and Waterford are adequate because their interest in vigorously pursuing claims against Defendants is aligned with the interests of the members of the class who were similarly harmed as a result of Defendant's false and misleading statements. There is no potential conflict between Wayne County's, Roseville's, and Waterford's interests and those of the members of the class. Each has duly signed Certifications and a Joint Declaration detailing their motivations for seeking appointment together and steps they have implemented to ensure that the Class's claims will be prosecuted zealously. *See* McCune Decl. Ex. 1 and 3; *see also In re Cardinal Health, Inc. Sec. Litig.*, 226

F.R.D. 298, 307-08 (S.D. Ohio 2005) (appointing group of investors because the group had "adduced information about its proposed manner of communication and decision-making" and "provided the Court with information about [its] procedural mechanisms for case management . . ."); *In re Bank of Am. Corp.*, 258 F.R.D. at 270 (appointing group and noting "declarations demonstrating cooperative efforts among" the group's members).

The conclusion that Wayne County, Roseville, and Waterford have acted, and will continue to act, independently of counsel is bolstered by their significant financial stake in the litigation and because they came together as a group of their own volition in order to ensure that the Class receives the best possible outcome. Because Wayne County, Roseville, and Waterford are a small, cohesive group of sophisticated investors with the capacity to reach consensus decisions, their financial interests are properly aggregated for the purposes of this motion.

## B. THE COURT SHOULD APPROVE PROPOSED LEAD PLAINTIFFS' CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), lead plaintiffs shall, subject to approval of the Court, select and retain counsel to represent the class they seek to represent. Proposed Lead Plaintiff has retained The Miller Law Firm, P.C. to serve as Lead Counsel for the Class. The Miller Law Firm has extensive experience successfully prosecuting and serving as lead counsel in a range of highly complex securities fraud class actions, both in state and federal court.  By way of example, the Miller Law Firm was co-lead counsel in *In re AIG 2008 Securities Litigation,* C.A. 08-CV-4772 (S.D.N.Y.) which was the highest securities fraud class action settlement in the United States in 2015.  In a May 21, 2013 order appointing The Miller law Firm co-lead counsel in a shareholder class action, Judge John C. Foster stated that "[The] Miller [Law Firm] ha[s] an exceptional record in the area of class litigation and significant resources which they can call upon in the representation of the class members." (*See* McCune

Decl., Ex. 5.)  Thus, the Court may be confident that the Class will receive the services of a firm that has provided clients in securities class actions with the highest possible quality of legal representation. The Miller Law Firm, P.C. has over 20 years of experience in successfully prosecuting complex securities actions and has frequently served in a leadership position in these cases. (*See* McCune Decl., Ex. 5.)

Proposed Lead Plaintiff has the largest losses and their counsel will fairly and adequately represent the Class. Accordingly, this Court should appoint Proposed Lead Plaintiff as Lead Plaintiff and approve Proposed Lead Plaintiff's selection of The Miller Law Firm as Lead Counsel for the Class and McCune Wright Arevalo, L.L.P. as Local Counsel for the Class. (*See* McCune Decl., Ex. 6.)

## V.    CONCLUSION

For all of the foregoing reasons, Proposed Lead Plaintiff respectfully requests that the Court: (1) appoint them as Lead Plaintiff in this action; (2) approve their selection of The Miller Law Firm as Lead Counsel for the Class and McCune Wright Arevalo, L.L.P. as Local Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: January 5, 2017          Respectfully submitted,

                                */s/  Richard D. McCune*
                                Richard D. McCune
                                (State Bar No. 132124)
                                **MCCUNE WRIGHT AREVALO, L.L.P.**
                                3281 East Guasti Road, Suite 100
                                Ontario, CA 91761
                                Tel: (909) 572-8019
                                Fax: (909) 557-1275
                                rdm@mccunewright.com
                                *Local Counsel for Movants &*
                                *[Proposed] Local Counsel for the Class*

Memorandum of Points and Authorities in Support of Motion to Appoint Lead Counsel
CASE NO. 8:16-CV-2282-TJH-AS

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller
Sharon S. Almonrode
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
*Counsel for Movants &*
*[Proposed] Lead Counsel for the Class*

Memorandum of Points and Authorities in Support of Motion to Appoint Lead Counsel
CASE NO. 8:16-CV-2282-TJH-AS